UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LARRY LAMBERT, II,

       Plaintiff,                                Civil Case No. 15-12334
                                                       Honorable Linda V. Parker

v.

PNC BANK, N.A. and PNC MORTGAGE,

       Defendants.
_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 24]

On April 6, 2015, Plaintiff Larry Lambert, II filed this lawsuit in Michigan state court against Defendants PNC Bank, N.A. ("PNC Bank") and PNC Mortgage (collectively, "Defendants" or "PNC"). (ECF No. 1-2 at Pg ID 21.) PNC Bank removed this matter to federal court on the basis of diversity jurisdiction on June 30, 2015. (ECF No. 1 at Pg ID 1.)

Presently before the Court is Defendants' motion for summary judgment filed pursuant to Federal Rule of Civil Procedure 56 on January 5, 2017. (ECF No. 24.) The motion has been fully briefed. Therefore, the Court is dispensing with oral argument with respect to the motions pursuant to Eastern District of Michigan Local Rule 7.1(f)(2). For the following reasons, the Court grants PNC's motion for summary judgment.

## I. Summary Judgment Standard

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant has the initial burden of showing "the absence of a genuine issue of material fact." *Id*. at 323. Once the movant meets this burden, the "nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted). To demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252.

"A party asserting that a fact cannot be or is genuinely disputed" must designate specifically the materials in the record supporting the assertion, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1). Rule 56 provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify to the matters stated." Fed. R. Civ. P. 56(c)(4). "In order to survive a motion for summary judgment, the non-moving party must be able to show sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy." *Lewis v. Philip Morris, Inc.*, 355 F.3d 515, 533 (6th Cir. 2004) (internal quotations and brackets omitted).

Notably, the trial court is not required to construct a party's argument from the record or search out facts from the record supporting those arguments. *See, e.g., Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) ("the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact") (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)); *see also InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091 (1990) ("A district court is not required to speculate on which portion of the record the nonmoving

party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim."). The parties are required to designate with specificity the portions of the record such that the court can "readily identify the facts upon which the...party relies[.]" *InterRoyal Corp.*, 889 F.2d at 111.

## II. Factual and Procedural Background

On October 31, 2005, Plaintiff obtained a mortgage for his property located at 325 Samburu Street, Pontiac, Michigan 48342 (the "Property"). (ECF Nos. 24 at Pg ID 228; 24-2 at Pg ID 252.) The mortgage was provided by National City Mortgage, a division of National City Bank of Indiana, to secure repayment of a loan in the amount of $257,590.00. (*Id.*) National City Bank of Indiana was later acquired by PNC and through the acquisition, PNC obtained the subject mortgage. (ECF No. 24 at Pg ID 229.)

Pursuant to the mortgage note, Plaintiff was required to make monthly payments in the amount of $1,363.19. (*Id.*; ECF No. 24-2 at Pg ID 252.) Plaintiff defaulted on his monthly payments in 2006 and a sheriff's sale took place on February 27, 2007. (ECF Nos. 24-5 at Pg ID 310; 24-8 at Pg ID 354.) PNC purchased the property at the sheriff's sale for $262,391.41. (ECF No. 24-8 at Pg ID 357.)

4

On February 28, 2008, Plaintiff and PNC entered into a stipulated agreement, where Plaintiff would be able to avoid foreclosure. (ECF No. 24-9 at Pg ID 360.) Per the stipulated agreement, Plaintiff placed an initial down payment of $15,000 and agreed to subsequent monthly payments amounting in $3,322.38 until January 31, 2010. (*Id.*) These payments required under the stipulated agreement were in addition to his monthly payments under the original note. (*Id.*) Beginning February 1, 2010, Plaintiff was only required to make his monthly payments under the original note. (*Id.*) Plaintiff made the $15,000 down payment and the monthly payments required under the stipulated agreement through October 2008. (ECF No. 24 at Pg ID 230.) Plaintiff testified at his deposition that he may have made one more payment pursuant to the Stipulated Agreement in November 2008, but no further payments because he soon requested a loan modification form. (Lambert Dep. 12/6/16 Tr. 21:2-26:25.)

Approximately a year prior to the stipulated agreement, PNC mistakenly discharged Plaintiff's mortgage and recorded it on June 19, 2007. (ECF No. 24-10 at Pg ID 364-65.) To correct this error, PNC initiated a state court action in Oakland County Court to reinstate the mortgage. (ECF No. 24-5.) PNC prevailed both at the trial and appellate level, and the mortgage was revived. (ECF Nos. 24-13, 24-14.)

5

In December 2013 or January 2014, Plaintiff submitted a loan modification application package to PNC pursuant to the Making Home Affordable Program ("MHAP"). (ECF No. 24-15.) PNC noticed the application was incomplete because Plaintiff was missing the following: an executed IRS form 4506-T; copies of his two most recent paystubs; a copy of his most recent quarterly or year-to-date profit/loss statement; copies of his two most recent bank statements; or a copy of his most recently filed federal tax return, and statements for Plaintiff's pension, checking and savings account, and certificate of deposit. (ECF No. 24-16.) On January 17, 2014, PNC sent a letter to Plaintiff notifying him that his loan application was incomplete. (ECF No. 24-16.) The letter listed the documents PNC required to evaluate his request and stated the documents must be returned by February 16, 2014. (*Id.* at Pg ID 481.)

Plaintiff resubmitted an incomplete loan modification application on January 20, 2014. (ECF No. 24-17.) It did not contain the documents that PNC requested in their January 17th letter. On February 24, 2014 and May 12, 2014, PNC sent two more letters to Plaintiff explaining that it could not proceed with his request because required documents were missing. (ECF Nos. 24-18, 24-19.) However, Plaintiff testified during his deposition that he did submit a complete application. (Lambert Dep. 12/6/16 Tr. 35:25-36:10.)

On August 26, 2014, PNC sent a notice to Plaintiff of his default on his loan repayment obligations. (ECF No. 24-21.) This notice included an intent to accelerate the loan balance if Plaintiff did not cure the default by September 25, 2014. (*Id.*) Plaintiff failed to cure the default and PNC published a notice of a foreclosure sale of the property. (ECF No. 24-22.) On April 7, 2015, a sheriff's sale occurred where PNC purchased the property for $385,710.02. (ECF No. 24-23.)

### III. Applicable Law & Analysis

#### A. Real Estate Settlement Procedures Act (Count I)

The Real Estate Settlement Procedures Act, 12 C.F.R. § 1024.41 *et seq.* ("RESPA") is a consumer protection statute that regulates the real estate settlement process. As part of that process, Regulation X provides a list of requirements and deadlines that servicers must comply with when a borrower submits a loss mitigation application.

RESPA provides that if a servicer receives a loss mitigation application 45 days or more before a foreclosure sale, the servicer shall determine whether the application is complete and if so, notify the borrower of the complete application. 12 C.F.R. § 1024.41(2)(i)(A). If the application is not complete, the servicer must notify the borrower what additional documents and information is required. 12 C.F.R. § 1024.41(2)(i)(B). The servicer is required to provide the borrower a

7

reasonable date by which they are required to submit the necessary documents. 12 C.F.R. § 1024.41(2)(ii).

The statute provides that a servicer is not required to evaluate an incomplete application as well:

> if a servicer has exercised reasonable diligence in obtaining documents and information to complete a loss mitigation application, but a loss mitigation application remains incomplete for a significant period of time under the circumstances without further progress by a borrower to make the loss mitigation application complete, a servicer **may, in its discretion**, evaluate an incomplete loss mitigation application and offer a borrower a loss mitigation option.

12 C.F.R. § 1024.41 (emphasis added).

The servicer cannot begin foreclosure proceedings if a borrower submitted a complete application at least 37 days before a scheduled foreclosure sale. 12 C.F.R. § 1024.41(2)(i)(B). However, the servicer is allowed to begin foreclosure proceedings if the "borrower's mortgage loan obligation is more than 120 days delinquent." 12 C.F.R. § 1024.41(f)(1)(i).

Plaintiff contends that PNC has failed to comply with the requirements listed in the statute for two primary reasons. First, PNC allegedly did not maintain a continuous relationship through a single point of contact. (ECF No. 25 at Pg ID 580.) Plaintiff does not elaborate on the significance of this point, nor provide evidence to support the statement. Second, Plaintiff contends that he never received the rejection letter stating his loan modification application was

8

incomplete. (*Id.*) In support of his contention that he never received a rejection letter, Plaintiff cites to pages 35 and 36 of his deposition testimony. However, counsel for the Plaintiff mischaracterizes his testimony—nowhere does Plaintiff deny receiving rejection letters from PNC.[1]

Plaintiff further notes that PNC referred his loan to foreclosure after a complete loss mitigation request, in violation of the statute. Plaintiff correctly notes that the foreclosure may not occur if a loan modification application has been submitted at least 37 days before a scheduled foreclosure date. Here, PNC proceeded with the foreclosure in March 2015, over a year after Plaintiff had submitted its loan modification application. (*See* ECF No. 24 at Pg ID 239.) The issue then turns to (1) whether Plaintiff's loan obligation was in default for at least 120 days and (2) whether Plaintiff submitted a complete application.

Plaintiff admitted during his deposition that he did not make any payments to his loan beyond November 2008. Plaintiff testified at his deposition that he may have made one more payment pursuant to the Stipulated Agreement in November 2008, but no further payments because he soon requested a loan modification form and was told he would need to stop making payments in order to be eligible for a

---

[1] Further, PNC states—without dispute by Plaintiff—the May 12, 2014 rejection letter was provided to PNC by Plaintiff's counsel during discovery. (ECF No. 27 at Pg ID 765.)

9

loan modification. (Lambert Dep. 12/6/16 Tr. 21:2-26:25.) There is no evidence that Plaintiff has made any payments after 2008.

PNC contends it never received a complete application and provides incomplete applications as support to its motion. (*See* ECF Nos. 24-16, 24-17.) However, Plaintiff contends that he submitted the "last set of requested documents on January 15, 2015." (ECF No. 25 at Pg ID 579.) For support, Plaintiff cites "Docket No. 1, Exhibit 11, Modification Application" but there is no such exhibit attached to the first docketed item in this matter. As PNC notes, Plaintiff has not provided any evidence that he submitted a complete loan modification in January 2015 or at any point prior, other than his own testimony. However, this Court is "not required to accept unsupported, self-serving testimony as evidence sufficient to create a jury question." *Brooks v. Am. Broadcasting Cos. Inc.*, 999 F.2d 167, 172 (6th Cir. 1993).

The Court finds that PNC proceeded in accordance with RESPA. Therefore, this Court is granting summary judgment as to Count I of Plaintiff's complaint.

### B. Negligence (Count II)

PNC next argues that this Court should grant summary judgment on Count II of Plaintiff's complaint alleging negligence. Under Michigan law, a plaintiff asserting a negligence claim must prove: "(1) 'that the defendant owed a legal duty to the plaintiff,' (2) 'that the defendant breached or violated the legal duty,' (3)

'that the plaintiff suffered damages,' and (4) 'that the breach was a proximate cause of the damages suffered.' " *Demo v. Red Roof Inns, Inc.*, 274 F. App'x 477, 478 (6th Cir. 2008) (quoting *Schultz v. Consumers Power Co.*, 506 N.W.2d 175, 177 (Mich. 1993)).

Plaintiff fails to address the arguments Defendants raise in support of their motion for summary judgment with respect to Plaintiff's negligence. For this reason, the Court grant PNC's motion as they have presented evidence in support of their motion demonstrating their entitlement to summary judgment on this claim. *See Brown v. VHS of MI, Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) (citing cases) ("This Court's jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment."); *see also Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1989) (explaining that before granting summary judgment as a result of the adverse party's failure to respond to the motion for summary judgment, the court must examine the movant's motion to ensure that he has discharged his burden of demonstrating the absence of a genuine issue as to a material fact). Therefore, the Court dismisses Count II of Plaintiff's complaint.

### C. Illegal Foreclosure (Count III)

PNC next argues that Plaintiff's claim of illegal foreclosure fails under the doctrine of collateral estoppel, because the issue of his default under the stipulated

11

agreement was determined in state court. PNC also claims that Plaintiff's wrongful foreclosure claim is time-barred by the expiration of the redemption period. In response, Plaintiff contends that PNC violated Michigan Compiled Laws § 600.3204 because they commenced foreclosure proceedings without a final decision on any loss mitigation. In particular, Plaintiff argues that the "foreclosure was illegal, there was an invalid default and attempts to engage in loss mitigation were frustrated by Defendant and Defendant failed to disclose accurate information regarding the Plaintiff's mortgage account." (ECF No. 25 at Pg ID 594.)

Section 600.3204 provides that:

(1) A party may foreclose a mortgage by advertisement if all of the following circumstances exist:

> (a) A default in a condition of the mortgage has occurred, by which the power to sell became operative.
>
> (b) An action or proceeding has not been instituted, at law, to recover the debt secured by the mortgage or any part of the mortgage or, if an action or proceeding has been instituted, either the action or proceeding has been discontinued or an execution on a judgment rendered in the action or proceeding has been returned unsatisfied, in whole or in part.
>
> (c) The mortgage containing the power of sale has been properly recorded.
>
> (d) The party foreclosing the mortgage is either the owner of the indebtedness or of an interest in the indebtedness secured by the mortgage or the servicing agent of the mortgage.

The Court does not find any evidence of an improper default. Plaintiff agreed to make payments pursuant to the stipulated agreement, and failed to comply. There is no genuine issue of material fact regarding Plaintiff's default, because he admitted to defaulting on mortgage payments during his deposition and provided no evidence of payments subsequent to October 2008. (Lambert Dep. 12/6/16 Tr. 21:2-26:25.) Plaintiff fails to provide evidence of an improper default.

Further, as stated above, Plaintiff has not provided the Court any evidence supporting his contention that PNC frustrated the loss mitigation process other than his own, self-serving testimony. Because there is no genuine issue of fact regarding the foreclosure, the Court is dismissing Count III of Plaintiff's complaint.

### D.     Exemplary Damages (Count V)[2]

"[E]xemplary damages are a form of compensation and not a cause of action[.]" *White v. Wells Fargo Bank, N.A.*, No. 14-12506, 2015 WL 1842811 at *5 (E.D. Mich. Apr. 22, 2015); *see also Bernard v. Fannie Mae,* No. 12-14680, 2013 WL 1282016 (E.D. Mich. Mar. 27, 2013). Because this is not an independent cause of action, this claim fails as well.

## IV.     Conclusion

---

[2] Plaintiff improperly numbered the fourth count as Count V.

The Court finds that the evidence presented demonstrates there are no genuine issues of material fact.

Accordingly,

**IT IS ORDERED** that Defendants' motion for summary judgment (ECF No. 24) is **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff's complaint is **DISMISSED.**

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: September 26, 2017

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, September 26, 2017, by electronic and/or U.S. First Class mail.

s/ R. Loury
Case Manager
